IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| LI XIAOMING ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil No. CCB 00-3697 |
| ) | |
| AMERICAN GREEN GARDEN ) | |
| INTERNATIONAL CORP., INC., et al. ) | |
| ) | |
| Defendants. ) | |

MEMORANDUM

Plaintiff Li Xiaoming ("Li") has brought suit against defendants American Green Garden International Corporation, Inc. ("AGGIC"), South Island Real Estate Investment Co., LLC ("South Island"), and Cheng You-Ming ("Cheng") regarding a loan from Li to the Hainan Reform and Development Co., Ltd. ("Hainan"). Li asserts that all defendants breached an implied contract to repay the loan, defendant Cheng converted the loan for his personal use, and all defendants were unjustly enriched. Li requests judgment in his favor and relief in the amount of $103,334.35 plus interest, attorneys' fees, and costs. Defendants have moved to dismiss on two grounds. First, defendants argue that this Court lacks personal jurisdiction over them. Second, defendants assert that plaintiff fails to state a claim upon which relief

-1-

can be granted. For the reasons discussed below, defendants' motion to dismiss will be denied.

I.

Taking all of the assertions in the complaint as true, the facts relevant to the disposition of this motion follow. Hainan, located on an island bearing the same name off the southern coast of the People's Republic of China, contacted the plaintiff in Maryland in December, 1994 for the purpose of borrowing money. In early January, 1995, Zeng Fei ("Zeng") – an agent of Hainan[1] – agreed to execute a loan agreement (the "Agreement") in the amount of $103,334.35, representing $100,000.00 in principal and $3,334.35 in associated costs. At the same time, Li electronically transferred $100,000.00 (the "Loan") from a Maryland bank account to a Hong Kong bank account in Cheng's name.[2]

In early May of the same year, Zeng brought the Agreement to Baltimore, Maryland, where it was executed by Li. The Agreement

---

[1] According to the complaint, Zeng was the president of Hainan and AGGIC. (Compl. ¶ 9.) It is unclear, however, at what time Zeng was president of either organization.

[2] Conflicting facts are alleged about the Hong Kong bank account. Plaintiff indicates in the complaint that the Hong Kong bank account was Cheng's (Compl. ¶ 10), and also that the Hong Kong bank account belonged to Hua Iuan Co., which Cheng owned (Compl. ¶ 28). Cheng, in turn, states that he merely "provided the use of my bank account in Hong Kong to Mr. Zeng Fei so that he could transfer money from his accounts in the United States to China." (Cheng Aff. ¶ 5.) In any event, the bank account to which Li wired the Loan was controlled by Cheng.

contains no choice of law provision. (Compl., Ex. A-2.) The Agreement provides that "the Creditor [Li] will transfer the loan electronically into the Debtor's bank account in Hong Kong," and "the Debtor [Hainan] will transfer the [re]payment electronically into the Creditor's bank account in the United States" in a single payment including principal and interest on January 6, 1996. (Compl, Ex. A-2, ¶¶ 4, 2.) Hainan did not repay the Loan as agreed, but Zeng acknowledged the Loan in April, 1996 and requested an extension of the repayment date to July 6, 1996. In consideration of the extension, Hainan agreed to pay additional annual interest of 5% for the six month extension period and pledged corporate stock as collateral for the Loan.

In a letter dated April 18, 1996 and faxed to Li in Maryland, Zeng agreed to sell shares of AGGIC to repay the Loan. (Compl. ¶ 15.) Thus, it appears that Hainan owned AGGIC, although it is unclear whether Hainan was the sole owner of AGGIC. In another letter dated June 18, 1996 and sent to Li in Maryland, Zeng indicated that Hainan had authorized the sale of real property to repay the Loan. (Compl. ¶ 16.) The property is known as the Connecticut Business Center ("CBC") and located in Glastonbury, Connecticut. (Compl. ¶ 17.) CBC is registered in the name of AGGIC (Compl. ¶ 17.) and claimed as a personal asset by Cheng (Compl. ¶ 29.). The Delegation Agreement, discussed below, indicates that Hainan owned CBC (Compl., Ex. B-2.); South

Island is the current record owner of CBC (Opp. to Mot. to Dismiss, 10.).

Li received another letter in Maryland dated July 3, 1996, in which Zeng urged Li not to file a breach of contract action because the suit would adversely affect the sale of CBC. Yet another letter, dated July 9, 1996 and faxed to Li in Maryland, requested again that Li not file suit because it would damage the reputation of CBC.

In a November 14, 1996 letter that was faxed to Li in Maryland, Zeng again acknowledged the Loan and assured Li that repayment was forthcoming and would be funded by the sale of CBC. The letter also authorized Wang Guorong ("Wang"), the manager of AGGIC,[3] to handle the sale of CBC and make the arrangements for repayment of the Loan.

A Delegation Agreement was signed by Hainan and Cheng on January 6, 1997, by which Hainan delegated all supervisory and legal representative authority of the CBC over its U.S. property to Cheng. The Delegation Agreement indicates that Cheng was a shareholder of Hainan. (Compl., Ex. B-2.)

Zeng faxed another letter to Li, dated January 7, 1997, indicating that he formally authorized an American company to sell CBC, and that the proceeds would be used to repay the Loan.

---

[3]According to Wang's two affidavits, Wang is the corporate secretary of AGGIC and the "managing member" of South Island. (Wang Affs.)

Zeng mailed Li stock certificates on April 8, 1997, again requesting deferment of the Loan repayment. This deferment request was written on AGGIC letterhead. (Compl. ¶ 23.) Later in 1997, a series of letters (dated August 27, August 29, August 31, and October 5) faxed by Zeng to Li in Maryland instructed Li to contact Cheng and/or Wang regarding the sale of CBC.

Li filed a complaint with the Hainan Office for Overseas Chinese Affairs ("OCA") regarding the unrepaid Loan in March, 1998. According to a letter from Zeng to Li dated March 21, 1998, the Loan was used to fund the operation of CBC from 1996 through 1998. (Compl. ¶ 26.) A letter from Zeng to OCA indicates that the Loan was initially wired by Li to the Hong Kong Hau Iuan Co., owned by Cheng. This April 22, 1998 letter also indicates that the Loan was used to fund the CBC's operation. (Compl. ¶ 28.)

Li filed suit against Hainan in November, 1999. In March, 2000, Li received a letter from the Chinese Central Authority stating that Hainan could not be served because it had moved and its new address was unknown. About one month later, the American Consulate in Guangzhou, China informed Li that Hainan was no longer in business. Li now believes Hainan closed down in December 1998. Li filed suit against defendants on December 21, 2000.

II.

A federal court normally follows a two-part analysis when evaluating a defendant's challenge to personal jurisdiction. First, the court must determine whether the state's long-arm statute authorizes the exercise of jurisdiction in light of the relevant facts. See Ellicott Mach. Corp. v. John Holland Party Ltd., 995 F.2d 474, 477 (4th Cir. 1993). If the state statute authorizes long-arm jurisdiction, then the court must determine whether the exercise of jurisdiction comports with the due process requirement of the Fourteenth Amendment. Id. Li argues that jurisdiction exists over defendants based on the Maryland long-arm statute, which authorizes jurisdiction over out-of-state defendants "who directly or by an agent ... [t]ransact[] any business or perform[] any character of work or service in the State." Md. Code Ann., Cts. & Jud. Proc. § 6-103(b)(1). Because the Maryland statute extends personal jurisdiction to the limits permitted by the Due Process Clause, the normal two-step inquiry frequently is "merged" into one: whether the exercise of jurisdiction over the defendants satisfies the due process requirements. Ellicott Mach. Corp., 995 F.2d at 477; see also Ciena Corp. v. Jarrard, 203 F.3d 312, 317 (4th Cir. 2000); Mylan Labs., Inc. v. Akzo, N.V., 2 F.3d 56, 61 (4th Cir. 1993).

"The constitutional touchstone of the determination whether an exercise of personal jurisdiction comports with due process

remains whether the defendant purposefully established minimum contacts in the forum State." Ellicott Mach. Corp., 995 F.2d at 477 (quoting Asahi Metal Ind. v. Superior Ct. of Cal., 107 S.Ct. 10226, 1030 (1987) (internal quotations omitted)). Specific jurisdiction may exist over individuals who, like defendants, do not have continuous and systematic contacts with the state that would allow the exercise of general personal jurisdiction over defendants. Helicopteros Nacionales de Colombia, S.A. v. Hall, 104 S. Ct. 1868, 1872 (1984). Specific jurisdiction may be established if (1) the defendant purposefully directed activities at the forum state, or purposefully availed itself of the privilege of conducting activities there, (2) the cause of action arises out of the defendant's forum-related activities, and (3) the forum state's exercise of personal jurisdiction satisfies due process notions of fair play and substantial justice. Marriott PLP Corp. v. Tuschman, 904 F. Supp. 461, 465 (D. Md. 1995).

Because I am deciding this pretrial motion without an evidentiary hearing, plaintiff need prove only a prima facie case of personal jurisdiction. Owens-Illinois, Inc. v. Rapid American Corp., 124 F.3d 619, 628 (4th Cir. 1997)(citing Combs v. Bakker, 886 F.2d 673, 676 (4th Cir. 1989)). In deciding whether Li has proved a prima facie case of personal jurisdiction, I must draw all reasonable inferences arising from the proof, and resolve all factual disputes, in plaintiff's favor. Id.

Defendants challenge the basis of personal jurisdiction, arguing that they have had no contact with the State of Maryland. Defendants AGGIC and South Island are both Connecticut corporations and emphasize that they are not organized under the laws of Maryland, are not located in Maryland, and have never transacted or solicited business in Maryland. Defendant Cheng avers that he is not a Maryland resident, has never been domiciled in the state of Maryland, and has never "voluntarily solicited business" in Maryland. (Mot. to Dismiss at 6.) Cheng resides in Connecticut and is domiciled in Beijing. Li counters that specific jurisdiction exists over all defendants based on Zeng's contacts with Maryland.

It is undisputed that defendants Cheng, AGGIC, and South Island have had no direct contacts with the State of Maryland, or even with Li. Nor is it disputed that Hainan, through its agent Zeng, had the only contacts with Maryland or Li. Zeng approached Li in Maryland to solicit the Loan, facilitated the transfer of money from the Maryland bank account to Cheng's Hong Kong bank account, subsequently traveled to Baltimore, Maryland to execute the Agreement, and thereafter communicated with Li in Maryland via phone, facsimile, and mail about the Loan over a more than three year period.[4] These contacts are sufficient to support

---

[4] I am mindful that phone calls, letters, and perhaps fax communications alone may be insufficient to establish personal jurisdiction. See, e.g., Promotions Ltd. v. Brooklyn Bridge

-8-

personal jurisdiction. See Jason Pharm., Inc. v. Jianas Bros. Packaging Co., 617 A.2d 1125, 1129 (Md. App. 1993) (finding contacts sufficient to support personal jurisdiction where nonresident defendant never entered the state but initiated contract negotiations by calling plaintiff in Maryland, engaged in negotiations with plaintiff located in Maryland, entered contract with plaintiff in Maryland, and sent down payment to Maryland); cf. Diamond Healthcare of Ohio, Inc. v. Humility of Mary Health Partners, 229 F.3d 448 (4th Cir. 2000) (finding contacts insufficient to support personal jurisdiction in Virginia for breach of contract suit where Virginia corporate plaintiff approached Ohio corporate defendant in Ohio, parties met in Ohio but never in Virginia during negotiations, and agreement contemplated the majority of its performance in Ohio). Hainan transacted business in Maryland through its disclosed agent Zeng, thereby "purposefully avail[ing] [it]sel[f] of the privilege of conducting activities in Maryland, [and] invoking the benefits and protections of Maryland law." Mylan Labs., Inc. v. Akzo, N.V., 2 F.3d 56, 61 (4th Cir. 1993). Further, Li's actions for breach of contract, conversion, and unjust enrichment arise out of the Maryland contacts by which Zeng entered into the

---

Centennial Comm'n, 763 F.2d 173 (4th Cir. 1985). Here, of course, there are numerous additional contacts between Zeng and the State of Maryland.

Agreement and secured the Loan from Li.[5]  Specific personal jurisdiction would exist over Hainan regarding suits that arise out of the Agreement and Loan.[6]

Prima facie evidence exists that Zeng may have been acting as an agent not on behalf of Hainan, but on behalf of undisclosed principals Cheng, AGGIC, and South Island.  The Maryland long-arm statute permits Maryland courts to assert personal jurisdiction over persons who conduct activities in Maryland "<u>by an agent</u>." Md. Code Ann., Cts. & Jud. Proc. § 6-103(b)(1) (emphasis added); <u>Mylan Labs., Inc.</u>, 2 F.3d at 61.  The evidence strongly suggests an ongoing relationship between Hainan, its representative Zeng, and the defendants.  Cheng was a shareholder of Hainan who was given complete authority over CBC pursuant to the Delegation Agreement.  (Compl., Ex. B-2.)  Hainan owned shares of AGGIC. (Compl. ¶ 15.)  In addition, Zeng was, at some time, president of both Hainan and AGGIC.  (Compl. ¶ 9.)  I note that the apparent agency relationship (and personal jurisdiction) are not based solely on these interrelationships, which have not yet been fully explained.  The most convincing evidence of agency is that the loaned money may never have been possessed by Hainan.  The

---

[5] Similarly, specific personal jurisdiction would exist for breach of the Agreement itself, fraud based on the Agreement, or another cause of action arising out of the Zeng's Maryland contacts.

[6] Plaintiff does not name Hainan as a defendant because he was unable to serve Hainan and believes Hainan no longer exists.

Agreement states that the Loan would be wired "into the Debtors bank account in Hong Kong." (Compl., Ex. A-2, ¶ 4.) Instead, it was wired from Li's account directly to Cheng's account in Hong Kong, see discussion supra, n. 2, and used to fund the operation of CBC. (Compl. ¶¶ 26, 28.) As stated earlier, CBC is registered in the name of AGGIC (Compl. ¶ 17.), claimed as a personal asset by Cheng (Compl. ¶ 29.), owned previously by Hainan (Compl., Ex. B-2), and owned presently by South Island (Opp. to Mot. to Dismiss, 10.).

Defendants would have me believe that their only connection to the Loan or Zeng is that Hainan invested in them. Perhaps this is true. At this juncture, however, I must resolve all factual disputes in favor of the plaintiff. Combs, 886 F.2d at 676. Accordingly, there is enough evidence to support a prima facie case that the defendants were undisclosed principals of Zeng. Just as Zeng's contacts would be sufficient to support personal jurisdiction over his disclosed principal Hainan, so are his contacts with Maryland sufficient to support personal jurisdiction over his undisclosed principals, Cheng, AGGIC, and South Island.[7] See Stripling v. Jordan Prod. Co., 234 F.3d 863,

---

[7] I note that personal jurisdiction might also exist over defendants under the doctrine of piercing the corporate veil. In Maryland, the corporate veil may be pierced for jurisdictional purposes if an agency test is met. The decision to pierce involves "a number of [] factors; in addition, [the facts] must present an element of injustice or fundamental unfairness." DeWitt Truck Brokers, Inc. v. W. Ray Flemming Fruit Co., 540 F.2d

869-72 (5th Cir. 2000) (denying motion to dismiss for lack of personal jurisdiction over first company where personal jurisdiction existed over second company and prima facie claim stated that second company entered contract at issue as undisclosed agent on behalf of first company, the undisclosed principal). Accordingly, defendants' motion to dismiss for lack of personal jurisdiction is denied.

### III.

A complaint should not be dismissed for failure to state a claim under Fed. R. Civ. P. 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957). The gravamen of defendants' motion to dismiss all three counts is that none of the defendants were parties to the Agreement or received any benefit as a result of the Agreement. In light of the distinct possibility that Zeng acted an agent for the defendants when he procured the Loan from Li, the defendants' argument loses its force. Therefore,

---

681, 687 (4th Cir. 1976). Although there may be a sufficient "element of injustice or fundamental unfairness" based on the facts before me, I do not have sufficient information to determine at this time whether the corporate veil may be pierced for jurisdictional (or other) purposes. AGGIC and South Island's Disclosure of Corporate Interest indicates that neither corporate defendant is an affiliate or parent of any corporation. This does not preclude the possibility that AGGIC or South Island were affiliates of the elusive entity Hainan. Nor does it preclude the possibility that Cheng could be reached via his shareholder relationship to Hainan.

defendants' motion to dismiss for failure to state a claim is denied."

Date: July //, 2001

/s/ Catherine C. Blake
Catherine C. Blake
United States District Judge

---

[8]None of the submitted affidavits are material to my decision regarding the defendants' 12(b)(6) motion to dismiss. Accordingly, the motion to dismiss has not been converted into a summary judgment motion.

-13-